■ THE PEOPLE OF THE STATE OF NEW YORK ex rel. HALIL TERNAKU, Appellant, v EUGENE S. LEFEVRE, as Superintendent of Clinton Correctional Facility, Respondent.—Appeal from a judgment of the Supreme Court at Special Term, entered December 1, 1976 in Clinton County, which denied a writ of habeas corpus without a hearing. This habeas corpus proceeding was initiated by petition verified November 1, 1976. Petitioner on February 11, 1970, was sentenced in Supreme Court, Queens County, to an indeterminate sentence of up to seven years in prison for robbery, third degree. He was paroled on that sentence on March 8, 1973 and on August 29, 1974, he was declared delinquent for absconding. On June 6, 1975, while on parole, he was arrested for robbery, first degree. He was convicted for robbery in the third degree and sentenced on November 19, 1975 to an indeterminate term of two to four years in prison to run concurrently with the prior sentence. Petitioner began this sentence at Ossining Correctional Facility on December 2, 1975. He was credited with 179 days' jail time on his second sentence computed from the time of his arrest on June 6, 1975 until his return to Ossining on December 2, 1975. This jail time was deducted from the four-year maximum of the second sentence. At the time of his return to Ossining he had already served three years and 11 days on his prior seven-year sentence. It is conceded that the four-year maximum sentence of November 19, 1975 was the controlling sentence, having the longest unexpired time to run. On December 5, 1975, three days after petitioner's return to Ossining, he was "out to court" to New York County, on another charge and returned on January 6, 1976. On March 19, 1976, he was again "out to Court", to Warren County, New Jersey, on another charge for which he was subsequently sentenced to a consecutive term of five to seven years in prison. He then returned to Clinton Correctional Facility on October 10, 1976. On October 12, 1976, he had a parole consideration hearing at Clinton and the Parole Board denied parole and ordered him held for 18 months. Petitioner's next parole hearing date is April, 1978. His maximum expiration date is June 2, 1979. His conditional release date, allowing for good behavior time of up to 16 months, or one third of his maximum four-year term, is February 7, 1978. As of March 18, 1977, he had served one year, three months and 15 days since his reception on December 2, 1975. Petitioner contends that Special Term erred in denying his petition for a writ of habeas corpus in that his two-year minimum sentence was satisfied by time served under the prior sentence (Penal Law, § 70.30, subd 1, par [a]), in that he is entitled to credit for good behavior equal to the unserved portion of his maximum term so as to warrant his immediate conditional release (Penal Law, § 70.40, subd 1, par [b]), in that he was arbitrarily and capriciously denied a timely parole hearing in violation of his constitutional rights and in that he is entitled to credit for all the time spent in custody since his arrest, June 6, 1975, against both sentences. The purpose of section 70.30 (subd 1, par [a]) of the Penal Law is to determine the time of eligibility for parole. The inmate may still be required to serve his maximum sentence though he fulfills statutory time criteria of eligibility for parole (see Commission Staff, Notes on New York Proposed Penal Law, § 30.30, subd 1). The term of his maximum sentence is not reduced by this subdivision. He is, therefore, not entitled to immediate conditional release but merely to a hearing which he received on October 12, 1976. Petitioner's unexpired maximum term was 48 months. His maximum good behavior allowance was

16 months. He must, consequently, serve 32 months, less jail time, of his second sentence and not the 16 months he alleges, before becoming eligible for conditional release. Thus, respondent has correctly set petitioner's tentative conditional release date for February 7, 1978. Section 803 of the Correction Law provides that good behavior allowance "may be granted" upon the happening of certain events. Good behavior allowances are discretionary and made upon the fulfillment of future contingencies. Good behavior allowances must be earned. Petitioner has no right to demand or require the allowances (Correction Law, § 803, subd [4]; § 804, subd [3]; see *People ex rel. Bright v Warden of N. Y. City Correctional Inst. for Men,* 79 Misc 2d 959). Petitioner is not entitled to parole jail time credit on his original interrupted sentence because he has been in custody since June 6, 1975, not on a parole delinquency, but for his arrest on a charge for which he was later convicted. The case does not involve a dismissal or acquittal which would have entitled him to jail credit (Penal Law, § 70.40, subd [c], par [iii]). His jail time did not exceed the sentence imposed for his new conviction. Jail time has been properly credited to petitioner's second sentence only *(Matter of Edwards v Preiser,* 51 AD2d 888; *Matter of Al Sabba [Cyril Morgan] v Casscles,* 43 AD2d 990, affd 36 NY2d 722). The further contention of petitioner that he was deprived of his constitutional rights because of the delay in affording him a parole hearing is not persuasive. Petitioner was "out of court" within three days of his reception in Ossining Correctional Facility. Although he was immediately eligible for a parole consideration hearing because the time served on his first sentence exceeded his new minimum, the delay was not unreasonable in view of his "out of court" absences. Petitioner returned to Ossining after his second "out of court" absence on October 6, 1976, and was considered for parole on October 12, 1976. The question, then, is moot. *Matter of Cunningham v Vincent* (50 AD2d 888) is distinguishable. Judgment affirmed, without costs. Koreman, P. J., Greenblott, Sweeney, Larkin and Mikoll, JJ., concur.